**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **REBECCA RICHARDS,** ) | **CASE NO. 5:11CV2086** |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MAGISTRATE JUDGE GREG WHITE** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | **MEMORANDUM OPINION & ORDER** |

Plaintiff Rebecca Richards ("Richards") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I. Procedural History

On June 25, 2009, Richards protectively filed an application for POD, DIB, and SSI alleging a disability onset date of May 25, 2004, and claiming that she was disabled due to back and gastrointestinal system disorders. Her application was denied both initially and upon reconsideration. Richards timely requested an administrative hearing.

On August 3, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Richards, represented by counsel, testified. Gene Burkhanner, an impartial vocational expert ("VE"), also testified. On May 5, 2011, the ALJ found Richards was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied

further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age 47 on the alleged disability onset date, Richards was a "younger" individual under social security regulations, but subsequently changed age category to "closely approaching advanced age." *See* 20 C.F.R. § 404.1563 & 416.963. (Tr. 15.) Richards has at least a high school education[1] and past relevant work as a licensed practical nurse. (Tr. 15-16.)

### *Medical Evidence*

### *Treating Physicians/Back Disorder and Colitis*

On February 18, 2004, Richards consulted with Zev Randy Maycon, M.D., a gastroenterology specialist. (Tr. 283-284.) Richards complained that in the last 15 years she had severe colitis causing persistent watery bowel movements. (Tr. 283.) Dr. Maycon noted that Pepto Bismol, Imodium, and Lomotil did not help, but Prednisone relieved some symptoms. *Id*. Dr. Maycon prescribed Entocort (a colitis medication). (Tr. 284.)

On March 30, 2004, Dr. Maycon noted that Richards reported significant improvement as she no longer had "any urgency, nocturnal bowel movements, incontinence, or frequent bowel movements up to 15 a day." (Tr. 282.)

On May 17, 2004, Dr. Maycon's treatment notes indicate that Richards was still taking Entocort and the diarrhea was gone, but that she reported that she no longer could afford the medication. *Id*. The doctor gave Richards two sample boxes of Entocort to taper off, and then began a new prescription, Asacol. *Id*.

In December, 2004, Richards was treated by Robert Ley, M.D., for complaints of blisters on her neck and right armpit that felt like hard lymph nodes. (Tr. 226.) No other complaints were indicated. The doctor noted that Richards refused to see a surgeon due to lack of health insurance. *Id*.

---

[1]The record reflects that Richards dropped out of high school in the ninth grade, but then obtained her GED and subsequently was certified as a licensed practical nurse. (Tr. 30.)

2

In February, 2006, Richards requested an appointment with Dr. Ley for complaints of back pain. *Id*. Dr. Ley had no openings that day, but offered one for the next morning, which Richards refused. *Id.*

In November, 2007, Dr. Ley treated Richards for ear pain and hearing loss. (Tr. 243.) On March, 17, 2010, she returned to Dr. Ley with complaints of muscle spasms in her feet, legs, arms, and hands. *Id*. Richards reported that the symptoms had been present for a significant amount of time, but worsened over the preceding three to four months. *Id*.

On August 13, 2010, Richards treated with Phillip Teague, M.D., complaining of increased muscle spasms in her feet, legs, hand, and stomach. (Tr. 274.) She also complained of chronic diarrhea, fatigue, and chronic low back pain. *Id.* On exam, Dr. Teague found positive lumbar tenderness on percussion, with reduced range of motion and reduced strength in the left lower extremity. *Id*. He diagnosed myalgias with spasm, weight loss with excessive metabolism, chronic diarrhea, fatigue, and chronic low back pain. *Id*. He prescribed Flexeril and gave samples of Welchol. *Id*.

On October 4, 2010, Richards returned to Dr. Teague with complaints of chronic diarrhea. *Id*. On November 16, 2010, she again saw Dr. Teague with complaints of lower back pain over the preceding three weeks, making it difficult for her to walk. (Tr. 290.) Examination revealed tenderness over the lumbar region with spasms, left greater than right, and tenderness of the left foot. *Id*. Dr. Teague diagnosed low back pain, acute, and lumber degenerative disc disease. *Id*.

### *State Agency Medical Examinations*

On August 12, 2009, Murrell Henderson, D.O., a state agency consultative examiner, evaluated Richards. (Tr. 229-231.) Richards reported she was applying for disability because of lower back pain. (Tr. 229.) She also indicated that she has chronic diarrhea due to colitis. *Id*. She further related that she has not seen a doctor since 2004. *Id*.

On examination, Dr. Henderson noted minor limitation in extension of the lumbar spine, the lower extremities showed some weakness in the left hip and left knee flexors and extensors, and decreased sensation along the medial aspect of the left lower extremity, as well as a positive

3

Romberg sign. (Tr. 230.) The doctor further noted a normal cervical spine with no scoliosis or hypertonicity, and satisfactory muscle strength in her spine. *Id*. Richards had no deficits in range of motion or strength and good use of her fingers. *Id*. An x-ray of the lumbar spine revealed disc space narrowing and moderate degenerative disease. (Tr. 232.) Dr. Henderson's impression was lower back pain, colitis, migraines, and paresthesias of the lower left extremity. (Tr. 230.) The doctor concluded that Richards had satisfactory upper body strength and mobility, normal cervical range of motion, and minimal limitation in her lumbar spine. *Id*. Based upon his evaluation, Dr. Henderson found that Richards "could tolerate some sedentary jobs provided she was able to move about if she felt the need." *Id.*

On October 27, 2009, Gerald Klyop, M.D., a state reviewing physician, found there was limited evidence in the record to support the severity of Richards' reported symptoms and, as such, her physical condition did not significantly limit her day-to-day activities. (Tr. 237.) Dr. Klyop further noted that Dr. Henderson's opinion was not a direct functional statement as it did not explicitly exclude heavier types of work. *Id*. On April 15, 2010, state reviewing physician Walter Holbrook, M.D., affirmed Dr. Klyop's finding. (Tr. 238.)

On May 3, 2010, state reviewing physician Rebecca R. Neiger, M.D., noted that Dr. Henderson's examination showed evidence of lumbar degenerative disc disease with some mild functional limitations. (Tr. 239.) Dr. Neiger further noted that Richards was capable of performing a medium residual functional capacity ("RFC") with no ropes, and "frequent, not sustained stooping and crouching." *Id*. She further indicated that Richards' colitis "does not appear to be severe based on her years of diagnosis and apparently stable weight/nutritional status." *Id*.

On July 15, 2010, state reviewing physician Elizabeth Das, M.D., completed a physical RFC evaluation. (Tr. 266-273.) Dr. Das noted that Richards' colitis was documented in 2000 "per biopsy," but in 2007 her blood work was normal, "no anemia, normal albumin." (Tr. 267.) Dr. Das, based upon the diagnosis of degenerative disc disease, opined that Richards was capable of lifting twenty pounds occasionally and ten pounds frequently. (Tr. 267.) She indicated Richards could sit for about six hours in an eight-hour workday and stand and/or walk

4

for six hours. *Id*. She could never climb ladders, ropes, or scaffolds, but could occasionally climb ramp/stairs or stoop, crouch and crawl. (Tr. 268.) Dr. Das found Richards to be credible as her allegations were consistent with the medical findings. (Tr. 271.)

### *Hearing Testimony*

At the hearing, Richards testified as follows:

- She experiences back pain that travels into her hip and then into both legs, but is worse on the left. (Tr. 32.) She also has numbness on the inside of her left leg. *Id*.

- In 2001, she had back surgery which helped alleviate the pain as she can now walk; prior to the surgery she was unable to walk. (Tr. 32-33.) Presently, she is limited to lifting eight pounds and standing approximately ten to fifteen minutes without having to change positions. (Tr. 33, 34.) If she sits for longer than fifteen to twenty minutes, her tailbone goes numb and she cannot move. (Tr. 34.)

- Regarding her colo-genetic colitis, she has diarrhea five to fifteen times per day, depending upon what she eats. (Tr. 35, 36.) Her pain medication also makes her diarrhea worse. (Tr. 36.) Because of the diarrhea, she has been wearing protective garments for about two years. *Id*.

- Other than recent treatment by Dr. Teague in 2010 with Welchol, the last time she was treated for her colon disease was in 2004, the last year she was covered by health insurance. (Tr. 43, 45.)

- Her husband is a self-employed truck driver and they cannot afford health insurance. (Tr. 37.)

- She is able to wash dishes and use the microwave to cook. (Tr. 38.) Her daughter stops by daily to help with the laundry, take out the garbage, and any other lifting tasks. (Tr. 38, 39.)

- On a typical day, she makes coffee, watches the squirrels in the yard, and talks to her sister on the telephone. (Tr. 41, 42.)

- In 2004, she quit work as a home-health care LPN due to the frequency she had to return home to use the bathroom because of her diarrhea. (Tr. 41.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Richards was insured on her alleged disability onset date, May 25, 2004, and remained insured through the date of the ALJ's decision, May 5, 2011. (Tr. 9, 17.) Therefore, in order to be entitled to POD and DIB, Richards must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Richards established medically determinable, severe impairments, due to a back disorder, colo-gernetic colitis, and an affective disorder; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Richards was found incapable of performing her past work activities, but was

---

[2]The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a"severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Richards is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure

7

prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI.  Analysis

Richards contends that the ALJ improperly rejected the opinion of the state examining physician, Dr. Henderson.  (Doc. No. 16 at 13-15.)

The ALJ is charged with a duty to evaluate all of the medical opinions in the record and resolve any conflicts that might appear.  20 C.F.R. §§ 404.1527 & 416.927.  As such, the ALJ will give each opinion the weight deemed appropriate based upon factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether it is consistent with the entire record.  20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2); SSR 96-2p.  It is the responsibility of the ALJ alone, not a reviewing court, to weigh the medical evidence and resolve any conflicts that might appear.  20 C.F.R. § 416.927(d).

Furthermore, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 Fed. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 416.927(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in

8

20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[3]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

Opinions from agency medical sources are considered opinion evidence. 20 C.F.R. § 416.927(f). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. §§ 404.1527(f)(2)(ii) & 416.927(f)(2)(ii). More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. *See* 20 C.F.R. §§ 404.927(d)(1) & 416.927(d)(1). However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight. *Hart v. Astrue*, 2009 WL 2485968, at *8 (S.D. Ohio Aug.5, 2009). This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96–6p, 1996 WL 374180. Thus, the ALJ weighs the opinions of agency examining physicians and agency

---

[3] Pursuant to 20 C.F.R. § 416.927(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, as well as the specialization of the physician. *See* 20 C.F.R. § 416.972(d), (f).

The Sixth Circuit, however, has held that the regulation requiring an ALJ to provide good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of several examining physicians' opinions over others. *See Kornecky*, 167 Fed. App'x at 508. The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id*.

Furthermore, it is well established that the plaintiff—and not the ALJ—has the burden to produce evidence in support of a disability claim. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x. 456, 459 (6th Cir. May 29, 2008) (*citing* 20 C.F.R. § 404.1512(a)). *See also Struthers v. Comm'r of Soc. Sec.*, 101 F.3d 104 (table), 1999 WL 357818 at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416.912, 416.913(d)."); *cf. Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefits). *See also Hayes v. Astrue*, 2011 WL 901013, *5 (S.D. Ohio Feb. 14, 2011).

Here, Richards presented no opinion as to her functional limitations by a treating physician. She relied on Dr. Henderson's opinion that she could tolerate some sedentary jobs, as

long as she was able to move around as needed. (Tr. 230.) The ALJ, however, rejected that portion of Dr. Henderson's opinion as it was inconsistent with the doctor's own clinical findings noting minimal limitations, as follows:

> At consultative examination [with Dr. Henderson] on August 12, 2009, the claimant reported that she was taking no medications. On physical exam, she had a normal cervical spine and minor limitations in extension of the lumbar spine. Her muscle strength was satisfactory in the spine. She had normal strength and range of motion of her upper extremities, some weakness in the left hip and left knee flexors and extensors, and strong calf muscles bilaterally. She had no other range of motion or strength limitations. Her cranial nerves II through XII were intact. Toe, heel, and tandem walk were done without difficulty. Deep tendon reflexes were normal at the elbows, knees, and ankles. She was able to squat without difficulty and had a normal gait (6F). She likely experiences pain from moderate degenerative disc disease, particularly without using prescribed medications, but she was able to walk without assistance, to squat, and to heel/toe/tandem walk on consultative examination (6F/2, 4).
>
> * * *
>
> The State Agency medical consultant's opinion is consistent with the above residual capacity. Her opinion is given significant weight as it is consistent with the medical evidence of record including clinical findings. The consultative examiner opined that the claimant would only be able to tolerate some sedentary jobs (6F/2). This opinion is given no weight as it is inconsistent with his own clinical findings the his [sic] own clinical findings of minimal limitations.

(Tr. 14, 15.)

As the Commissioner contends, Dr. Henderson's opinion is inconsistent with his findings. Although more weight is generally placed on the opinions of examining as opposed to reviewing physicians, the ALJ sufficiently explained why he rejected Dr. Henderson's opinion. First, Dr. Henderson noted that Richards had some weakness and tenderness in her lower extremities, but also noted that Richards' cervical spine was normal, that her muscle strength in the spine was satisfactory, and she showed no deficits in range of motion or strength. (Tr. 230.) Second, Dr. Henderson's opinion was not well-supported as he did not explain why Richards was limited to sedentary work. Even though the ALJ did not mention the other state agency physician's opinions, it is clear he relied upon the opinions from Dr. Klyop (finding no significant limitations in day-to-day activities), Dr. Das (finding of a light RFC ) and Dr. Neiger (finding of a medium RFC). *See Kornecky,* 167 Fed. App'x at 508. (The Sixth Circuit does not require that the ALJ address all the evidence, as long it is clear that he considered the evidence.)

11

Richards also asserts that the ALJ improperly evaluated her colitis. (Doc. No. 16 at 15-18.) Specifically, Richards claims that even though the ALJ found it to be a severe impairment, he did not account for it in the RFC assessment. (Doc. No. 16 at 17.)

RFC is an indication of an individual's work-related abilities despite their limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 416.945(e). As such, the ALJ bears the responsibility for assessing a claimant's RFC, based on *all* of the relevant evidence. *See* 20 C.F.R. § 416.945(a) (emphasis added). "Judicial review of the Commissioner's final administrative decision does not encompass re-weighing the evidence." *Carter v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40828 at **21-22 (W.D. Mich. Mar. 26, 2012) (*citing Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472 (6th Cir. 1982); *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 807 (6th Cir. 2008)). Moreover, a plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide basis for overturning the Commissioner's RFC determination. *Carter*, 2012 U.S. Dist. LEXIS 40828 at **21-22.

Richards, relying on S.S.R. 96-7p, contends that the ALJ ignored her statement at the hearing that her condition causes her to go to the bathroom between five and fifteen times per day. (Doc. No. 16 at 16-17.) S.S.R. 96-7p provides in pertinent part, as follows:

> In determining the credibility of an individual's statements about symptoms, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

S.S.R. 96-7p at *1.

The ALJ considered Richard's colitis as follows:

> In terms of the claimant's alleged bowel problems, the claimant has not been treated specifically for this since 2004, with one exception where she was tried on a prescription (testimony; see 16F). Medications have apparently helped in the past. In March 2004, it was noted that she had a significant improvement in her bowels after a six week trial of Entocort, though she testified that she no longer takes

12

medications (16F/3).

(Tr. 14-15.)

The ALJ properly found that Richards had not sought medical treatment for her colitis since 2004. As there were no medical records to support her claim of having to use the bathroom so often during the day, but there was evidence that medication helped her symptoms, there was no reason for the ALJ to include the impairment in his RFC calculation. Furthermore, it was reasonable for the ALJ to note the lack of medical treatment for the colitis, especially when Richards sought treatment for other ailments during the time period she had no insurance coverage. For the most part, she did not complain of colitis. (Doc. No. 18 at 15-16.)

Except for Dr. Teague treating Richards for her back pain and chronic diarrhea in 2010, without indicating any work restrictions, there was no medical opinion after 2004 substantiating Richard's colitis and her testimony that she had to use the bathroom so often. Even if a medical opinion stated that Richards would need to relieve herself frequently, an ALJ is not required to adopt such an isolated opinion regarding employment conditions. *See Penick v. Astrue*, 2009 WL 3055446, *11 (E.D. Va. Sep. 23, 2009). The ALJ, therefore, properly evaluated the opinion evidence.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

                                                s/ Greg White
                                                United States Magistrate Judge

Date: June 8, 2012